IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| VICKI WERKING, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-6144-CO |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

KATHRYN TASSINARI
Harder, Wells, Baron and Manning, PC
474 Willamette, Suite 200
Eugene, Oregon 97401

     Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

NANCY A. MISHALANIE
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

COONEY, Magistrate Judge:

Plaintiff Vicki Werking[1] seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

The matter is now before the court on the Commissioner's motion to remand for further administrative proceedings (docket # 9).  The Commissioner moves to remand for further evaluation of the evidence and contends the record does not support immediate award of benefits. Werking opposes the Commissioner's motion and seeks an order remanding for the calculation and award of benefits.

For the following reasons, I recommend the court deny the Commissioner's motion and remand this case for calculation and award of benefits.

## **BACKGROUND**

Werking originally filed for DIB and SSI on December 4, 1997.  Tr. 194-06, 692-4.  She alleged disability due to bipolar disorder, post traumatic stress disorder (PTSD) and chemical dependency in remission.  Tr. 199.  Working contends she has been unable to work due to these impairments since July 2, 1994.  Tr. 724.

Her applications were  initially denied.  Tr. 166-70, 696-703.   Hearings were held before an administrative law judge (ALJ) on April 6 and 23, 1999.  Tr. 65-159.  The ALJ issued an

---

[1]When Werking initially filed her application, her married name was Hesselgrave.  Tr. 190, 419.  She subsequently reverted to Wilbur, before remarrying and adopting her present name.

unfavorable decision on June 28, 1999.  Tr. 13-44.  Werking's request for review before the

appeals council was denied, and she filed a timely petition in U.S. District Court.  Tr. 7, 724.

   This court issued an Order on September 2, 2001, reversing and remanding the ALJ's

decision for further proceedings under sentence four 42 U.S.C. 505(g).  This court directed the

ALJ to discuss the following: 1) whether Werking's bipolar and post-traumatic stress disorders

are severe impairments 2)  to consider the opinions of Drs. Kirkendell and Eckstein, "and weigh

them under proper legal standards," and 3) to consider whether the effects of Werking's substance

abuse can be distinguished from her remaining mental impairments.  Tr. 821-2.  The Appeals

Council subsequently reiterated these instructions to the ALJ.  Tr. 823-4.

   A second hearing was held before the same ALJ on December 16, 2003.  Tr. 742-820.

This resulted in a second unfavorable decision which Werking presently appeals.  Tr. 724-735.

   Born in 1964, Werking completed the tenth grade, earning a GED in 1982.  Tr. 194, 203.

In 1994 and 1995 Werking attended training to become a medical secretary.  Tr. 203.  Between

1989 and 1995 she worked as a waitress, secretary, kitchen helper and water bed assembler.  Tr.

203, 237.

## DISABILITY ANALYSIS

   The Commissioner engages in a sequential  process encompassing between one and five

steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520, 416.920;

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Working challenges the ALJ's evaluation of the

evidence and his conclusions at steps four and five.

   If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity (RFC).  The claimant's

3 - FINDINGS AND RECOMMENDATION

RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e), 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing functional limitations rests upon the claimant. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Yuckert*, 482 U.S. at 141-2; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1566, 416.966.

## THE ALJ'S FINDINGS

The ALJ found Werking's ability to work impeded by her PTSD, major depression, personality disorder and amphetamine dependence in remission. Tr. 734. _The ALJ did not consider the effects of Werking's bipolar disorder. His RFC evaluation states, "The claimant has the following residual functional capacity: medium exertional level, simple, repetitive jobs with no more than sporadic public contact." Tr. 734. The ALJ found that this RFC did not preclude Werking's past relevant work as a water bed assembler or kitchen helper. Tr. 734. Accordingly, the ALJ found Werking not disabled at any time through the date of his decision. Tr. 734.

4 - FINDINGS AND RECOMMENDATION

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

**DISCUSSION**

On remand from this court, the ALJ was directed to consider Werking's bipolar impairment, the opinions of Drs. Kirkendall and Eckstein and the effect of Werking's substance abuse upon her remaining mental impairments. Tr. 821-2. Werking claims the ALJ failed to properly evaluate the testimony of three medical witnesses, failed to properly evaluate lay witness testimony and erred in relying upon an inaccurate RFC calculation in finding Werking could perform her past relevant work. The Commissioner does not concede error, and moves to remand for further evaluation of the disputed testimony and an additional RFC calculation and, if necessary, a step five analysis.

**1. Medical Source Statements**

The ALJ was explicitly directed to consider two psychological opinions, with particular

attention to Werking's bipolar disorder.  Tr. 821.   Additionally, DDS requested a third

examining psychologist's report, which was submitted to the record shortly before Werking's

second hearing in December 2003.  Tr. 1038-1047.  Each of these psychological opinions is

addressed below.

a.    **Dr. Kirkendall**

Examining psychologist Dr. Kirkendall evaluated Werking in February 1998.  Tr. 418-

423.  Kirkendall diagnosed bipolar disorder with psychotic features, post traumatic stress

disorder (chronic and delayed), passive aggressive personality disorder, and a "poor" level of

adaptive functioning.  Tr. 422.  Kirkendall specifically stated that, "no statement can really be

made to the extent to which Vicki's current problems are driven by her chemical dependency."

Tr. 422.

The ALJ noted this statement, but did not consider the full extent of Kirkendall's opinion.

The ALJ cited Kirkendall's bipolar diagnosis, but did not discuss or consider this diagnosis,

instead focusing upon Kirkendall's statement regarding Werking's substance abuse.   Tr. 728.

The ALJ apparently relied upon this drug and alcohol statement in his credibility analysis, but did

not consider Kirkendall's diagnostic findings in his decision.  Tr. 728, 734.

The ALJ is not required to exhaustively recite each element of a medical opinion, but the

ALJ must give sufficiently specific reasons for rejecting a treating or evaluating opinion.

*Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Smolen*, 80 F.3d at 1285.  The ALJ

presently neglected to assign any weight to Kirkendall's opinion and did not address Kirkendall's

bipolar diagnosis.  Because the ALJ was explicitly instructed to consider this opinion and,

specifically, the concurrent bipolar diagnosis under "proper legal standards," this omission is

6 - FINDINGS AND RECOMMENDATION

erroneous.  *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

**b.**     **Dr. Eckstein**

Dr. Eckstein evaluated Werking at the request of DDS in October 1998.  Tr. 563-569. Eckstein noted Werking's history of suicide attempts and episodic self mutilation. Tr. 566. Eckestein tested and documented Werking's diminished memory, recall and cognitive functioning.  Tr. 565-568.   Eckstein also administered MMPI personality testing, which revealed an "invalid" profile, suggesting several explanations for this result.  Tr. 568 . Eckstein did not suggest the MMPI result invalidated all neuropsychological testing.

The ALJ noted the "invalid" profile, but did not consider Eckstein's analysis.  Tr. 568. The MMPI is one of several cognitive tests Eckstein conducted, and Eckstein specifically stated that her diagnoses were based upon clinical mental status examination, rather than Werking's reports.  Tr. 568.  The ALJ's reasoning for rejecting Eckstein's conclusions based upon the MMPI profile is not a rational reading of Eckstein's report.  *Magallanes*, 881 F.2d at 750, *see also Smolen* v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Notably, the Appeals Council noted this error in their remand instructions to the ALJ prior to the present decision.  Tr.  823.

Eckstein's relevant diagnoses include dissociative disorder, bipolar disorder, methamphetamine abuse (recently in remission) and post traumatic stress disorder.  Tr. 568. Eckstein also completed a Mental Health Residual Functional Capacity evaluation, where she found 1) *moderate* limitation in understanding and carrying out simple instructions, sustaining ordinary routine, and interacting with co-workers and the public, and 2)  *marked* limitation in Werking's ability to understand and carry out detailed instructions, perform within a schedule and maintain regular work attendance or "complete a normal workday and workweek without

7 - FINDINGS AND RECOMMENDATION

interruption from psychologically based symptoms...." Tr. 570. Eckstein also concluded that

Werking's daily activities were markedly limited, that Werking experienced frequent deficiencies

in concentration, persistence and pace, and that Werking had experienced three or more episodes

of decompensation in a work-like setting. Tr. 571. Lay witness testimony corroborates

Eckstein's endorsements, discussed below.

The ALJ did not assign weight to Eckstein's testimony and did not consider Eckstein's

RFC assessment. The ALJ also failed to consider Eckstein's bipolar diagnosis. Tr. 729. In light

of this court's specific instructions, this is again erroneous. *See Sullivan*, 490 U.S. at 886.

**c.    Dr. Prescott**

Dr. Prescott evaluated Werking in November 2003. Tr. 1038-1045. The ALJ did not

assign weight to Prescott's opinion, but suggested that Prescott failed to review Werking's

medical file, thus invalidating her report. Tr. 731. Prescott's report clearly indicates that Prescott

reviewed Werking's medical file, twice citing previous diagnoses and test results in that record.

Tr. 1040, 1044. The ALJ's assertion is not an accurate, or rational, reading of Prescott's report.

*Magallanes*, 881 F.2d at 750.

Prescott diagnosed PTSD, recurrent major depression, amphetamine dependence in

sustained full remission and a personality disorder with borderline and antisocial features. Tr.

1044. Prescott's clinical tests indicated poor auditory and visual memory, and a general and

working memory profile below the twentieth percentile. Tr. 1043. Prescott stated that Werking

"was cooperative with the test and demonstrated good effort. It is this examiner's opinion that the

results are a true reflection of her learning and memory capacity." Tr. 1042. Taken together,

Prescott concluded that Werking's scores throughout testing suggest significant impairment with

8 - FINDINGS AND RECOMMENDATION

most functions of learning and memory, and that her intellectual functioning is in the "borderline" range.  Tr. 1043-1044.

Prescott also completed a mental health RFC, which the ALJ did not acknowledge.  Tr. 1046-1047.  Prescott's assessment is consistent with Eckstein's earlier assessment and lay witness testimony.  Prescott found Werking *moderately* limited in making simple work-related judgements and in interacting with supervisors or coworkers.  Tr. 1046-7.  Prescott found Werking *markedly* limited in understanding, remembering and carrying out detailed instructions, responding appropriately to pressures in a work setting.  Tr.  1047-8.  The ALJ stated that Prescott did not support "such extreme limitation," but in response to the RFC form question asking, "What supports this statement?"  Prescott answered, "Ms. [Werking] shows symptoms of panic and paranoia in response to behavior of others, such as a supervisor.  She has a very rigid emotional style and poor coping skills."  Tr. 1047.

Prescott finally found that Werking's capabilities and ability to complete a work day are affected by her poor concentration and depression and anxiety.  Tr. 1047. She supports this statement, writing, "Ms. [Werking] shows strong impairment with disorders of PTSD and depression and personality disturbance."  Tr. 1047.  Finally, Prescott did not endorse statements regarding contributory effects of the claimant's substance abuse and did not suggest Werking's drug use is a material cause in her impairments.  Tr. 1047. The ALJ failed to discuss this statement in considering whether Werking's substance abuse is a material factor in her disability, which is again error in light of this court's remand instructions.  *See Sullivan*, 490 U.S. at 886.

**d.    State Agency Reviewing Physicians**

The ALJ writes that he "continues to reject" the findings of state agency doctors.  Tr. 731.

9 - FINDINGS AND RECOMMENDATION

The ALJ claims reviewing physicians did not consider Werking's drug use and did not have access to later medical records. Tr. 731. This is erroneous: reviewing psychologists in December 2003 considered Prescott's report, which is the most recent medical evidence in the record. Tr. 1073. Initial reviewing psychologists also considered evidence of Werking's drug use and recovery, noting that she is "generally credible," with no evidence of exaggerating or malingering. Tr. 355. Thus, the ALJ's review of DDS findings is erroneous. *See Magallanes*, 881 F.2d at 750.

**2. Lay Witness Testimony**

Working claims the ALJ improperly rejected testimony submitted by Trudy Hammond, who supervised Werking at her volunteer job. The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

Hammond testified that Werking participated in a welfare-to-work program Hammond supervises. Tr. 745. Hammond's testimony described the nature of Hammond's program and the

mentoring Hammond provided Werking, such as job shadowing, teaching appropriate work-related behavior and providing a sheltered workplace. Tr. 749. Hammond testified that Werking's emotional liability and memory impairment interfere with Werking's ability to complete a normal workday. Tr. 759-60, 763, 765. Clinical evaluation, discussed above, corroborates Hammond's testimony.

The ALJ did not assign specific weight to Hammond's testimony, commenting only that Hammond's work experience program did not provide an incentive for volunteers to enter the competitive workplace. Tr. 732. This is not an acceptably germane reason for discrediting Hammond's testimony. *Nguyen*, 100 F.3d at 1467. Lay witness testimony does not establish disability, but may corroborate other testimony. *Id., Dodrill*, 12 F.3d at 918. Here, Hammond's observations regarding Werking's ability to function in a work-like setting confirm clinical evaluation and prediction submitted by Eckstein and Prescott.

### 3.   ALJ's Step Four Finding

At step four, the ALJ found that Werking could perform past relevant work as a waterbed assembler or kitchen helper. Tr. 734. The ALJ's findings did not include a step five analysis. At Werking's December 2003 hearing, however, the ALJ solicited testimony from a vocational expert (VE). The VE testified that if Prescott's report were credited, Werking would be unable to perform past relevant work and unable to perform work existing in the national economy at step five. Tr. 809-810. The VE next testified that according to Eckstein's report, Werking would be unable to maintain competitive employment. Tr. 811-12. These reports are internally consistent and are corroborated by lay witness testimony.

### Conclusion

11 - FINDINGS AND RECOMMENDATION

After remand from a federal court, the Commissioner may render a new, independent decision. *See* 20 C.F.R. §§ 404.983-494, 416.1483-1484.  When the district court remands a case with specific instructions, the Commissioner may not disregard the court's order.  Deviation from a remand order in subsequent administrative proceedings is legal error, subject to reversal on further judicial review. *Sullivan*, 490 U.S. at 886.  As discussed above, the ALJ repeatedly failed to address remand instructions to evaluate Werking's bipolar disorder and to address the opinions of Drs. Kirkendall, Eckstein and Prescott under proper legal standards.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when "no useful purpose would be served by further administrative proceedings" or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).  A remand for benefits rather than corrective administrative proceedings may be appropriate where the Commissioner's errors have already caused long delay in determining the claim. *See Kennedy v. Apfel*, No. Civ. 99-6039-HA, 2000 WL 913690 (D. Or. Feb. 2, 2000).

Improperly rejected evidence should be credited and an immediate award of benefits directed where:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d at 1178 citing *Smolen v.*

*Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Of course, the third prong of this test is actually a

subpart of the second. *See Harman*, 211 F.3d at 1178 n.7.

Here, because the ALJ failed to give legally sufficient reasons for disregarding the

opinions of Drs. Prescott, Eckstein, and Kirkendall, their testimony is credited. Crediting the

opinions of Drs. Kirkendall, Eckstein and Prescott establishes that Werking's condition prevents

her from performing her past relevant work at step four, or work in the national economy at step

five. After crediting their testimony, there are no outstanding issues to be resolved before

determining Werking is disabled within the meaning of the Act. Furthermore, it is clear from the

record that the ALJ would be required to find Werking disabled if the evidence were credited.

*Harman*, 211 F.3d 1172 at 1178; *Smolen*, 80 F.3d at 1292. Permitting the Commissioner another

opportunity to properly develop the record and correct the same errors identified by this court in

its 2001 remand order is not justified. The ALJ's failure to comply with earlier remand

instructions convinces this court that further delay to correct administrative proceedings would

not be appropriate. Accordingly, this court exercises its discretion and recommends that this

matter be remanded for calculation and award of benefits.

### **RECOMMENDATION**

Based on the foregoing, the Commissioner's Motion to Remand for further administrative

proceedings (docket # 18) should be DENIED. The decision of the Commissioner should be

REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for calculation

and award of benefits.

***This recommendation is not an order that is immediately appealable to the Ninth***

***Circuit Court of Appeals***. **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of**

13 - FINDINGS AND RECOMMENDATION

Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. ___*The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties have ten days within which to file a response to the objections*___.  **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this __15___ day of June, 2006.


_____/s/_____
John P. Cooney
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATION